IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

MICHAEL ADAMS, #355170,

    Petitioner,

v.                                                           Case No.: GJH-16-1934

RICHARD GRAHAM, *et al*,

    Respondents.

## MEMORANDUM OPINION

In this habeas corpus action filed pursuant to 28 U.S.C. § 2254, Petitioner Michael Adams attacks his 2009 convictions in the Circuit Court for Montgomery County, Maryland for first-degree murder and use of a handgun. ECF No. 1. Adams claims that his trial and appellate counsel were ineffective for failing to argue that the trial court abused its discretion by failing to *voir dire* the jury to determine what they heard during a lengthy wait in a courthouse hallway, and whether they could remain impartial after spending hours in the hallway with the victim's family. ECF No. 1 at 5.[1] Respondents, the Warden of Western Correctional Institution where Adams is confined and the Attorney General of the State of Maryland, filed an answer, ECF No. 11, to which Adams has replied, ECF No. 14. On August 14, 2017, the Court instructed the Respondents to supplement their Answer and provide the Court with the post-conviction hearing transcript. ECF No. 16. This submission, docketed as a Supplemental Response, ECF No. 23, has been received, making the case ripe for disposition.

Having reviewed the parties' submissions, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*

---

[1] All citations to the docket reference the electronic pagination.

1

and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons set forth herein, the court denies the Petition and declines to issue a Certificate of Appealability.

I.  **BACKGROUND**

The facts and procedural history of the case are outlined in the Court's August 14, 2017 Memorandum Opinion, ECF No. 16 at 2–6, and will not be reiterated here. What is most relevant are the allegations presented on post-conviction review and at the post-conviction hearing: that the trial court erred by allowing the jury on several occasions during the course of trial, but particularly during the hours-long discussion of jury instructions, to remain in the hallway outside the courtroom where members of the victim's family and friends were located. ECF No. 1-4 at 10. The post-conviction review court granted Adams the right to file a belated motion for reconsideration of his sentence but otherwise denied post-conviction relief. *See* ECF No. 1-4 at 2.

Adams then sought leave to appeal that adverse decision to the Court of Special Appeals, raising only the claim that the trial court erred in permitting the jurors to remain in the hallway, thus denying Adams his right to due process and an impartial jury. ECF No. 11-7 at 6. In an unreported opinion filed on March 18, 2016, the intermediate appellate court declined to review the case. ECF No. 1-5 at 2.

Adams filed his Petition for Writ of Habeas Corpus on June 7, 2016. ECF No. 1. Adams claims that his trial and appellate counsel were ineffective for failing to argue that the trial court abused its discretion by failing to *voir dire* the jury to determine what they heard and whether they could remain impartial after spending hours in a hallway outside the courtroom where members of the victim's family and friends were located. ECF No. 1 at 5; ECF No. 1-1 at 4–6.

The Court previously explained that Adams's ineffective assistance claims were procedurally defaulted, but that the Court would consider the claim that his due process right to an impartial jury was violated. ECF No. 16 at 8.

## II. STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 134 S.Ct 1697, 1702 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."); *Virginia v. LeBlanc*, 137 S.Ct. 1726, 1728 (2017).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court

precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

### III. DISCUSSION

As previously noted, Adams' ineffective assistance claims as presented were not raised when seeking leave to appeal the denial of post-conviction relief, and thus are procedurally defaulted. ECF No. 16 at 8. The Court examines that portion of Adams' claim that has been fully presented for litigation: whether Adams was deprived of an impartial jury as a result of the Montgomery County practice of allowing jurors to remain in the hallway outside the courtroom, where jurors could be exposed to comments made by the public, including the victim's family and friends.

A criminal defendant's right to an impartial jury trial is protected by the United States Constitution, *Strickland v. Washington,* 466 U.S. 668, 685 (1984), and is well defined under Maryland law. *Wright v. State,* 131 Md. App. 243, 253 (2000) (quoting *Allen v. State,* 89 Md. App. 25, 42 (1991)). Supreme Court authority "absolutely" forbids "external causes tending to disturb the [jury's] exercise of deliberate and unbiased judgment . . . at least until their harmlessness is made to appear." *Mattox v. United States,* 146 U.S. 140, 149–50 (1892). Further, any unauthorized "private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." *Remmer v. United States,* 347 U.S. 227, 229 (1954). Thus, a trial court must consider the prejudicial effect of any external contact that may tend to influence the verdict. *Mattox,* 146 U.S. at 150–51. Furthermore, the external contact need not necessarily be a "communication" to trigger some judicial inquiry into possible prejudice. *See Smith v. Phillips,* 455 U.S. 209, 212–15 (1982) (requiring judicial inquiry into possible prejudice arising from a

4

juror's job application in the office of the prosecutor trying the case); *Mattox,* 146 U.S. at 150 (requiring judicial inquiry into the prejudicial potential of "reading of newspapers"). The Court has clarified that an external contact need not be intentional. *Gold v. United States,* 352 U.S. 985 (1957) (granting a new trial where the FBI approached jurors about a different but related case, even though "the intrusion was unintentional").

In support of his habeas claim, Adams relies on *Barnes v. Joyner,* 751 F.3d 229, 240 (4th Cir. 2014). *See* ECF No. 14 at 2–3. In *Barnes*, a juror contacted a minister to ask a question about the death penalty and brought a Bible into the jury room to read a passage to fellow jury members before deliberations. *Id.* at 234. In state post-conviction proceedings, Barnes offered information in support of his juror misconduct claim, including post-verdict interviews with other jurors. *Id.* at 235. The evidence showed that one juror read the Bible passage to other jurors, intending to counteract a defense attorney's argument that "if the jurors voted for the death penalty, they would one day face God's judgment for killing these defendants." *Id*. Based on this evidence, Barnes asserted that he established juror misconduct in the sentencing phase of his capital trial. *Id.* The post-conviction court did not hold a hearing on this claim, finding it procedurally barred because it was not raised on direct appeal. *Id*.

Barnes sought habeas relief in federal court, arguing that he was denied an impartial jury, which the district court denied. On appeal, the Fourth Circuit held that the presumption of prejudice and corresponding hearing requirement announced by the Supreme Court in *Remmer v. United States*, 347 U.S. 227 (1954), was clearly established law in the Fourth Circuit, but stressed that "not every allegation of an unauthorized communication between a juror and a third party will trigger the *Remmer* presumption and its corresponding hearing requirement." *Id.* at 237-244. The court found that:

> [T]o be entitled to a *Remmer* presumption and a *Remmer* hearing, "a defendant must first establish both that an unauthorized contact was made

> and that it was of such a character as to reasonably draw into question the integrity of the verdict."

*Id.* at 244 (quoting *Stockton v. Virginia*, 852 F.2d 740 (4th Cir. 1988)). The court further found that the *Remmer* presumption and hearing requirement are triggered by showing that "extrajudicial communications or contacts were more than innocuous interventions." *Id.* at 245 (citations omitted). The Fourth Circuit found that the state post-conviction court's decision was an unreasonable application of clearly established federal law, and that the allegations and evidence presented to the state post-conviction court satisfied the threshold for holding a *Remmer* hearing. *Id.* at 246–52. Nonetheless, the court held that Barnes was not entitled to federal habeas relief unless he proved that he was actually prejudiced by the juror misconduct, and remanded the case to the district court for further review. *Id.* at 252–253.[2]

The facts of this case do not rise to the level of those in *Barnes*. Robert Bonsib and Bruce Marcus, Adams's trial defense counsel, testified at the post-conviction hearing. ECF No. 23-1. Bonsib testified that there was no proof that any interaction occurred between the jurors and the other people in the public hallway; however, he recalled proffering to the trial court that he received information that the victim's family had expressed aloud concern over the court's potential instructions and was "having a little, they're having little kids run around out there, they're making displays of affection and they're clearly trying to influence the jury in our opinion." *Id.* at 53–56. His request that the court conduct an individual inquiry of the jurors was ignored, but the court later instructed the jury to disregard anything it heard in the hallway. *Id.* at 56–57.

---

[2] In addition to his reliance on *Barnes,* Adams states that his sister, Nicole Heath, was in the public hallway outside the courtroom and overheard improper conversations. ECF No. 14 at 4. Heath did not testify at the post-conviction hearing. ECF 23-1 at 3. As the Court may only consider the record before the state court, Heath's comments are not part of the record under consideration. *See Cullen v. Pinholster,* 563 U.S. 170, 181–82 (2011) (reviewing a § 2254(d) habeas corpus challenge to a state court conviction is limited to the record before the state courts at the time the relevant decisions were made).

Bonsib testified that it was common in Montgomery County for jurors to be in the public hallway outside the courtroom during breaks in a trial, but that he reported this intermingling to the court due to concern that there was something more going on. *Id*. at 59–60. When asked whether he was aware of any specific improper intermingling between the jurors and any third parties, Bonsib responded as follows:

> THE STATE: And the reason being, because there is the possibility of intermingling, but you didn't know of any actual intermingling, did you?
>
> ATTORNEY BONSIB: Not in terms of direct contact or efforts to directly communicate with them, no.

*Id*. at 80. Similarly, co-counsel Marcus did not recall any specific problem with the jury being in the public hallway during the discussion on instructions and stated that he had no recollection of Adams's sister lodging a complaint about the jurors being around the victim's family. *Id*. at 108–109. Marcus testified that he and Bonsib received unconfirmed information that the victim's family was complaining about the court's potential jury instructions, which they relied upon as the basis for asking the court to conduct further inquiry of the jurors. *Id.* at 110

The state post-conviction court found as follows:

> Petitioner's final allegation is that the trial court erred by allowing the jurors to remain in the hallway during the jury instruction discussion on the morning of Tuesday, November 25, 2008. The jury had been sent home early the previous day to allow the court and counsel time to discuss the jury instructions with the plan being for the jurors to return Tuesday morning to be instructed. Although everyone thought instructions had been agreed upon on Monday, when court convened again on Tuesday new discussion ensued which spanned several hours all while the jury restlessly waited in the hallway.
>
> During this unexpected delay the court was made aware of comments by the victim's family that may have been overheard by the jury waiting in the hallway. Trial counsel brought this to the court's attention, "[a]pparently, during the break, in the presence of the jury, the Hadeed family is out there, talking about how the Court has now made it okay for somebody to shoot somebody in their own home." . . . Trial counsel continued, "we believe the Court is going to need to conduct an inquiry of the jurors to see what, if anything, they have heard out there . . . or seen." *Id.* at 69. The court continued discussing another issue, "let me see if I can get through this other problem first." *Id.* . . .

7

> Ultimately, the court never conducted an individual inquiry, instead opting to instruct the jury concerning anything that could have been or would be overheard, ". . . but I don't want anything said by anybody that would influence you. I mean, I don't, I don't know what comments, if any, that you hear outside . . . anything that your [sic] hear, don't let that influence you . . . anything that you hear from the conflicting views of the two respective families, please don't let that influence you in any, any respect whatsoever." *Id*. at p. 82-83.
>
> Finally, Judge Rowan read the jury an instruction explaining exactly what the evidence in the case was on which they were to base their decision. During the reading, Judge Rowan instructed using the Maryland Criminal Pattern Jury Instruction 3:00 to explain that evidence is "everything you hear from the witness stand and the exhibits and the stipulations. In making your decision, you must consider the evidence in this case, that is, testimony from the witness stand. . . ." *Id.* at 194-195.
>
> This court is of the opinion that allowing the jury the freedom of the hallway is still the practice in Montgomery County, this freedom allows jurors more space than the jury room provides. Further, the jurors have access to the larger bathrooms and are free to conduct any familial or business affairs in greater privacy without eleven other people overhearing their conversations in a small area. It is a rare occurrence to have any issue with having the jury remain in the hallway and in the instant case, before the potential issue was raised, the court had no indication there would be a problem.
>
> The court cannot find that the trial court erred because the trial court took steps to remedy the situation through instructing the jury to ignore anything they overheard and instructing them on what they were to consider as evidence in this case. There is no reason to believe that the jury would not follow the instructions of Judge Rowan and no reason to believe that the Petitioner's due process was not protected and ensured by the instructions the court gave in place of an individual inquiry.

ECF No. 14-6 at 3–5.

There is no evidence supporting a finding of any improper contact between the victim's family and members of the jury who were in a public hallway, nor any evidence of private communications, private contact, or tampering about the matter before the jury, which would require judicial intervention under *Barnes* or *Remmer*. ECF No. 23-1 at 21, 53, 107–08. The post-conviction court noted that casual contact between jurors and trial participants can occur at

any time in or around a courthouse, ECF No. 23-1 at 148, and that it was impractical to *voir dire* jurors every time they went to a public place during a trial. *Id.* at 149.

Thus, Adams has failed to establish juror misconduct, and provides no evidence that the jurors were tainted by the actions of the victim's family while in the public hallway. Further, even if such misconduct occurred, Adams has not established that he was prejudiced because the jurors ignored the trial court's curative instructions.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Because reasonable jurists would not find Adams's claim debatable, no certificate of appealability will issue. Denial of a Certificate of Appealability in the district court does not preclude Adams from requesting Certificate of Appealability from the appellate court.

## V.  CONCLUSION

As the state post-conviction court found, Adams failed to establish that his right to an impartial jury was violated in this case. His petition is therefore denied. A separate order follows.

Date: <u>July   20  </u>, 2018                            <u>       /s/                        </u>
                                                                    GEORGE J. HAZEL
                                                                    United States District Judge